1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY SWEARINGEN, et al.,

Plaintiffs,

v.

HEALTHY BEVERAGE, LLC, et al.,

Defendants.

Case No. 13-cv-04385-EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Docket No. 92

## I.    INTRODUCTION

Plaintiffs Mary Swearingen and Robert Figy filed this class action complaint against Defendant Healthy Beverage challenging Defendant's practice of labeling its products with the term "evaporated cane juice" ("ECJ"), which Plaintiffs assert is a misleading term for sugar. Currently pending before the Court is Defendant's motion to dismiss Plaintiffs' Second Amended Complaint. Docket No. 92 ("Motion"). The Court **GRANTS** the motion.

## II.    BACKGROUND

A.    California and Federal Laws Regulating Food Labeling

Food manufacturers in California must comply with identical state and federal laws and regulations that govern the labeling of food products. Foremost among these is the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), including its food labeling regulations, 21 C.F.R. § 101 *et seq.* California's Sherman Law adopts and incorporates the FDCA, stating that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." California Health & Safety Code § 110100. Under the FDCA, food is "misbranded" if "its labeling is false or misleading in any particular," or

1    if it does not contain certain information on its label or its labeling.  21 U.S.C. § 403(a).

2    The FDCA requires that ingredients be listed by their common or usual name, which is the

3    name established by common usage or by regulation.  21 C.F.R. § 104(a)(1); 21 C.F.R. § 102.5.

4    The position of the Food and Drug Administration ("FDA") is that "evaporated cane juice" is not

5    the common or usual name of any sweetener (*e.g.*, sugar).  In 2009, the FDA issued *Guidance for*

6    *Industry: Ingredients Declared As Evaporated Cane Juice, Draft Guidance* ("Draft Guidance"),

7    2009 WL 3288507.  According to the Draft Guidance, the term ECJ is "false and misleading"

8    because it "fails to reveal the basic nature of the food and its characterizing properties (i.e., that the

9    ingredients are sugars or syrups) as required by 21 C.F.R. § 102.5."  *Id.* at *3; 21 U.S.C. 343(a)(1).

10   The FDA did not initially finalize its draft guidance.  On March 4, 2014, the FDA reopened the

11   comment period on the Draft Guidance with the intent to "revise the draft guidance, if appropriate,

12   and issue it in final form."  *See Swearingen, et al. v. Late July Snacks LLC*, 13-CV-4324-EMC

13   Docket No. 57 (Order on Supp. Briefing); *Late July*, 13-CV-4324-EMC Docket No. 53-1 (Def.

14   Second Request for Judicial Notice, Ex. A, *FDA Notice to Reopen Comment Period*).  On May 25,

15   2016, the FDA issued its final guidance on the use of the term "evaporated cane juice," titled

16   "Ingredients Declared as Evaporated Cane Juice: Guidance for Industry" ("Final Guidance").  *Late*

17   *July*, 13-CV-4324-EMC Docket No. 92.  The Final Guidance states that "the common or usual

18   name for an ingredient labeled as 'evaporated cane juice' includes the term 'sugar' and does not

19   include the term 'juice.'"  Final Guidance at 7.  This is because the "basic nature" of ECJ is a

20   "sugar." Final Guidance at 7.

21   B.    Facts and Procedural History

22   Healthy Beverage is a producer of food products that sells its products, including Steaz

23   Iced Green Tea and Steaz Organic Energy Drinks, to consumers through grocery and other retail

24   stores throughout the United States and directly to consumers through its website.  SAC ¶ 2.

25   Healthy Beverage uses the term "evaporated cane juice" on its package labels for, *e.g.*,  Steaz Iced

26   Green Tea with Blueberry Pomegranate, Steaz Iced Green Tea with Peach, and Steaz Organic

27   Energy Drink Orange; its product labeling does not use the term "added sugar".  SAC ¶ 4, 35.  The

28   company uses the same term ("evaporated cane juice") on its website and in advertising.  SAC ¶

2

113.

Plaintiffs Mary Swearingen and Robert Figy, citizens of California, bought and purchased Healthy Beverage products Steaz Iced Green Tea with Blueberry Pomegranate, Steaz Iced Green Tea with Peach, Steaz Organic Energy Drink Orange, Steaz Organic Energy Drink Berry, and Steaz Organic Energy Drink Super Fruit. SAC ¶ 2. The label for these products used the term ECJ during the Class Period which is defined as September 30, 2009 to the present. SAC ¶¶ 1, 135. Plaintiffs are health-conscious consumers who wish to avoid "added sugars" in the products they purchase. *Id.* ¶ 62. As such, they scanned the ingredient lists of the products at issue for forms of added sugar and failed to recognize "evaporated cane juice" as one of these forms. *Id.* ¶ 63. They would not have bought the products had they known that these products contained "added sugar." *Id.* ¶ 86.

Plaintiffs first filed a class action complaint for equitable and injunctive relief on September 20, 2013. Docket No. 1 (Complaint). On April 28, 2014, Defendant filed a motion to dismiss the First Amended Complaint, and, in the alternative, to stay the action pending the Ninth Circuit's decision in *Kane, et al. v. Chobani, Inc.*, No. 14-15670, where the plaintiffs alleged that Chobani unlawfully and deceptively used the term "evaporated cane juice" to describe added sugar in its yogurt products, and the FDA's consideration of ECJ. Docket No. 49. Following the FDA's notice that it had reopened the comment period on its draft guidance regarding ECJ, this Court denied in part the motion to dismiss and stayed the action pursuant to the doctrine of primary jurisdiction on June 11, 2014. Docket No. 58.

On July 22, 2016, after the FDA issued its Final Guidance, this Court lifted the stay. Docket No. 89. Plaintiffs filed their Second Amended Complaint shortly after. Docket No. 90. Based on their allegations in the Second Amended Complaint, plaintiffs brought claims for: (1) violations of the California Business & Professions Code § 17200 (Unfair Competition Law); (2) violations of California Business & Professions Code § 17500 (California False Advertising Law) (FAL); (3) violations of California Civil Code § 1750, et. seq. (Consumers Legal Remedies Act); and (4) unjust enrichment. Docket No. 90 ¶¶ 145-206. Defendant then filed the instant motion to dismiss the Second Amended Complaint, and, in the alternative, to strike all references to the

3

1    health benefits of green tea and prayers for injunctive relief.  Docket No. 92.

2                                III.    **DISCUSSION**

3    A.      Motion to Dismiss Second Amended Complaint

4            1.      Legal Standard

5            Defendant seeks to dismiss Plaintiffs' Second Amended Complaint with prejudice for

6    failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Motion at 2.  Under

7    Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief

8    may be granted.  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of

9    the claims alleged.  *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  In

10   considering such a motion, a court must take all allegations of material fact as true and construe

11   them in the light most favorable to the nonmoving party, although "conclusory allegations of law

12   and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v.*

13   *Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed

14   factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its

15   face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows

16   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

17   *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. at 556.  "The

18   plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer

19   possibility that a defendant acted unlawfully."  *Iqbal,* 556 U.S. at 678.

20           Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

21   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

22   particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

23   *Co.,* 567 F.3d 1120, 1124 (9th Cir.2009).  To satisfy the heightened standard under Rule 9(b), the

24   allegations must be "specific enough to give defendants notice of the particular misconduct which

25   is alleged to constitute the fraud charged so that they can defend against the charge and not just

26   deny that they have done anything wrong."  *Semegen v. Weidner,* 780 F.2d 727, 731 (9th

27   Cir.1985).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and

28   specific content of the false representations as well as the identities of the parties to the

                                                    4

1    misrepresentations.' " *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (per curiam)

2    (internal quotation marks omitted).  The plaintiff must set forth "what is false or misleading about

3    a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994)

4    (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 253 F.3d 423,

5    429 n. 6 (9th Cir. 2001).

6            2.       Plaintiffs' UCL, FAL, and CLRA Claims

7            As noted above, in this case, Plaintiffs essentially assert fraud-based claims of misleading

8    labeling under the UCL, FAL, and CLRA.  The UCL prohibits any "unlawful, unfair or fraudulent

9    business act or practice." Cal. Bus. & Prof. Code § 17200.  Because § 17200 is written in the

10   disjunctive, it establishes "three varieties of unfair competition: practices which are unlawful,

11   unfair, or fraudulent." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone, Co.*, 20

12   Cal. 4th 163, 180 (1999).  Practices are "unlawful" when they violate other laws: § 17200

13   "borrows" violations of other laws, treating them as unlawful practices that are independently

14   actionable under the UCL.  *Id.* at 179 [citations omitted].  Practices are "unfair" when grounded in

15   "some legislatively declared policy or proof of some actual or threatened effect on competition."

16   *Id.* at 186-87.  "Unfair," under § 17200, refers to conduct that could violate an antitrust law, that

17   violates the policy or spirit of such laws, or that could otherwise significantly threaten or harm

18   competition.  *Id.* at 187.  Practices are "fraudulent" when "members of the public are likely to be

19   deceived"; more specifically, under the fraud prong, "reliance [on the part of the plaintiff] is an

20   essential element of fraud." *Poldolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48, *as*

21   *modified* (Nov. 5, 1996), *as modified* (Nov. 20, 1996); *In re Tobacco II Cases*, 46 Cal. 4th 298,

22   326 (2009).

23           The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal Bus. &

24   Prof. Code § 17500.  The CLRA prohibits "unfair methods of competition and unfair or deceptive

25   acts or practices." Cal. Civ. Code § 1770.  Claims asserting fraud or deception under each of these

26   three statutes are analyzed using the "same objective test, that is, whether 'members of the public

27   are likely to be deceived.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal.

28   2012) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)); *see also Williams v. Gerber*

5

1    *Prod. Co.*, 523 F.3d 934, 938 (9th Cir. 2008), *opinion amended and superseded on denial of reh'g*,

2    552 F.3d 934 (9th Cir. 2008).  Fraud claims under each statute require "proof of reliance on the

3    alleged misrepresentations or omissions" by the defendant.  *In re MyFordTouch Consumer*

4    *Litigation*, C-13-3072-EMC, Docket No. 301 at 2 (N.D. Cal. 2016) (citing *In re Tobacco II*, 46

5    Cal. 4th at 328).

6    Plaintiffs allege that Defendant's mislabeling of its products with the term "evaporated

7    cane juice" ("ECJ") is unlawful under the UCL.  SAC ¶ 6.  As noted above, the Sherman law

8    adopts and incorporates the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq*.

9    ("FDCA").  21 U.S.C. § 343(a).  Under the FDCA, food is "misbranded" if "its labeling is false or

10   misleading in any particular," or if it does not contain certain information on its label or its

11   labeling.  21 U.S.C. § 403(a).  Accordingly, under the Sherman Law, products are "misbranded"

12   when their "labeling is false or misleading."  *See* 21 U.S.C. § 343(a); 21 U.S.C. § 403(a).

13   Plaintiffs contend that Healthy Beverage's use of the term ECJ was "false and misleading" in light

14   of the FDA's determination that ECJ is not the common or usual name for sugar.  SAC ¶ 40; Final

15   Guidance at 6.

16   As an initial matter, the Court rejects Plaintiffs claim that reliance need not be shown for

17   their claims arising under the "unlawful" prong or any other prong of the UCL in this case.  The

18   California Supreme Court has made it clear that, regardless of which prong of the UCL a plaintiff

19   asserts, when the basis of the UCL claim is a claim of misrepresentation, a plaintiff must

20   demonstrate actual reliance on the allegedly deceptive or misleading statements.  *Kwikset Corp. v.*

21   *Superior Court*, 51 Cal. 4th 310, 326, 327 n.10 (2011).

22   Plaintiffs argue that if it is required, the requisite reliance can be inferred because Healthy

23   Beverage's use of ECJ constitutes a "material misrepresentation," and that even if the plaintiff

24   fails to plead actual reliance, "a presumption, or at least an inference, of reliance arises wherever

25   there is a showing that a misrepresentation was material."  *Engalla v. Permanente Med. Group,*

26   *Inc.*, 15 Cal. 4th 951, 977 (1997).  A misrepresentation is judged to be "material" if "a reasonable

27   man would attach importance to its existence or nonexistence in determining his choice of action

28   in the transaction in question."  *Engalla*, 15 Cal 4th 951, 977 (1997).  However, even where a

6

1  misrepresentation is material, a court cannot presume reliance "where the underlying theor[y] of

2  liability is implausible." *Pratt v. Whole Food Mkt. California, Inc.*, No. 12-05652-EJD, 2015 WL

3  5770799, *7 (N.D. Cal. Sept. 30, 2015). Nor can courts presume reliance where the record will

4  not permit it. *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).

5        Here, even assuming that the use of ECJ constitutes a material misrepresentation, Plaintiffs

6  cannot plausibly claim to have relied on any such misrepresentation. Plaintiffs' SAC alleges that

7  "Healthy Beverage's website, http://steaz.com, is incorporated into the label for each of

8  Defendants' products." SAC ¶ 14. That website specifically states that "cane juice is natural

9  sugar." SAC ¶¶ 106, 127. Since Plaintiffs specifically allege that they "read and reasonably relied

10  on the labels" on Defendants' products, SAC ¶ 127, the materials they read include the statements

11  on Healthy Beverage's website incorporated into the labels. Given that allegation, Plaintiffs

12  therefore knew ECJ was in fact sugar. Thus, Plaintiffs cannot have reasonably relied upon

13  Healthy Beverage's misleading use of the term ECJ on its packaging. At the hearing on this

14  motion, Plaintiffs' counsel did not dispute this fact. Indeed, counsel conceded that Plaintiffs "may

15  have looked at" the website, but merely argued that they "did not focus" on it. Docket No. 101 at

16  6:20-23. Whether or not they "focused" on Healthy Beverage's disclosure, they concede that read

17  it. Under these facts, reliance on the package label is not reasonable. For that reason, Plaintiffs'

18  claims of mislabeling under the UCL, FAL, and CLRA all fail to state a claim.

19        That leaves only Plaintiffs' claim for unjust enrichment. Healthy Beverage first argues that

20  that claim should be dismissed on the ground that "in California, there is not a standalone cause of

21  action for 'unjust enrichment.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir.

22  2015). As the court in *Astiana* recognized, however, California courts have stated that courts may

23  construe an unjust enrichment claim "as a quasi-contract claim seeking restitution." *Rutherford*

24  *Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Thus, as the Ninth Circuit

25  previously explained, the "Supreme Court of California and California Courts of Appeal have

26  recognized actions for relief under the equitable doctrine of unjust enrichment." *Naoko Ohno v.*

27  *Yuko Yasuma*, 723 F.3d 984, 1006 (9th Cir. 2013) (citing *Ghirardo v. Antonioli,* 14 Cal.4th 39

28  (1996)). "The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless

7

1   have conferred a benefit on defendant which defendant has knowingly accepted under

2   circumstances that make it inequitable for the defendant to retain the benefit without paying for its

3   value." *Hernandez v. Lopez,* 180 Cal.App.4th 932, 938 (2009).  For example, *Dunkin v. Boskey*,

4   82 Cal. App. 4th 171, 197 (2000), the court held that where a purported contract granting plaintiff

5   paternity rights to a child conceived by artificial insemination, the plaintiff could nonetheless

6   recover damages equal to the amount of benefit he had conferred on defendant in reliance of the

7   agreement under an unjust enrichment theory.  Alternatively, "a party to an express contract can

8   assert a claim for restitution based on unjust enrichment by 'alleg[ing in that cause of action] that

9   the express contract is void or was rescinded.'"  *Rutherford Holdings*, 223 Cal. App. 4th at 231

10  (quoting *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* 44 Cal.App.4th 194, 203

11  (1996)).

12          Late July is therefore incorrect in asserting that the unjust enrichment claims should be

13  dismissed solely on the ground that no such claim is cognizable under California law; it is, so long

14  as the Court construes it as a quasi-contract claim for restitution.  Nonetheless, Plaintiffs do not,

15  and cannot, state such a claim.  It is not clear whether Plaintiffs allege that they had a contractual

16  relationship with Healthy Beverage on the basis of their purchases, but their claim fails under

17  either theory of unjust enrichment.  If Plaintiffs argue that Healthy Beverage accepted a benefit

18  from them without a contract, it would not be "inequitable for [Healthy Beverage] to retain the

19  benefit" where Plaintiffs acknowledge that they were aware of the true nature of ECJ.  *Hernandez,*

20  180 Cal.App.4th at 938.  Conversely, to the extent Plaintiffs allege that they did have a contractual

21  relationship with Healthy Beverage, the SAC contains no allegation that their contracts to

22  purchase Healthy Beverage's products were "void or rescinded." *Rutherford Holdings*, 223 Cal.

23  App. 4th at 231.  Plaintiffs merely state that "[b]y the actions described in this SAC," i.e.

24  fraudulent misrepresentation with respect to ECJ, "Defendant was unjustly enriched at the expense

25  of Plaintiffs and the Class."  It is true that a fraudulent misrepresentation makes a contract

26  voidable and/or subject to rescission. *See* Restatement (Second) of Contracts § 164 (1981); Cal.

27  Civ. Code § 1689.  But this is so only where the party seeking the remedy relied to his or her

28  detriment on the misrepresentation. *See* Restatement (Second) of Contracts § 164 cmt. c (1981)

8

**United States District Court**
For the Northern District of California

1   ("No legal effect flows from either a non-fraudulent or a fraudulent misrepresentation unless it

2   induces action by the recipient, that is, unless he manifests his assent to the contract in reliance on

3   it."). In short, any claim for unjust enrichment fails for the same reason that Plaintiffs' claims

4   under the UCL, FAL, and CLRA fail; it depends on a finding that Plaintiffs' relied to their

5   detriment on Defendants' misrepresentations. Because no such finding is plausible in light of

6   Plaintiffs' allegations, the unjust enrichment claim fails as well.

7   B.      Leave to Amend

8          "After a party has amended a pleading once as a matter of course, it may only amend

9   further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital,*

10  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Such amendments are governed by

11  Federal Rule of Civil Procedure 15, which provides that "[t]he court should freely give leave when

12  justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has instructed that "this policy is

13  to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708,

14  712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th

15  Cir.1990)). At the same time, "[l]iberality in granting a plaintiff leave to amend is subject to the

16  qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad

17  faith, and is not futile." *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).

18         "A motion for leave to amend may be denied if it appears to be futile or legally

19  insufficient. However, a proposed amendment is futile only if no set of facts can be proved under

20  the amendment to the pleadings that would constitute a valid and sufficient claim or defense."

21  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery*

22  *Ward & Co.,* 785 F.2d 762, 766 (9th Cir.1986)).

23         The Court finds that any amendment in this case would be futile. Plaintiffs have conceded

24  reading Healthy Beverage's website, which disclosed that ECJ *is* "natural sugar." An allegation of

25  reliance, which is necessary for all of Plaintiffs' claims, is impossible. An amended complaint,

26  moreover, may only allege "other facts consistent with the challenged pleading." *Reddy v. Litton*

27  *Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990) (citing *Schreiber Distributing Co. v. Serv-Well*

28  *Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Plaintiffs have already amended their

9

1  complaint twice.  The Court will not allow them a third bite at the apple to amend a factual

2  allegation that is squarely inconsistent with a prior allegation.  Accordingly, the Court dismisses

3  Plaintiffs' claims with prejudice.

### IV.  CONCLUSION

5  For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss and

6  **DISMISSES** Plaintiffs' Second Amended Complaint with prejudice.  The Clerk is instructed to

7  enter judgment and close the file.

8  This order disposes of Docket No. 92.

10  **IT IS SO ORDERED**.

12  Dated: May 2, 2017

_____

EDWARD M. CHEN
United States District Judge